UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIE LINN MCCORMACK, on behalf of herself and all others similarly situated, and in the interests of the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>MARK L. HEIDEMAN, Bannock County Prosecuting Attorney,<br><br>    Defendant. | Case No. 4:11-cr-00397-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Jennie Linn McCormack filed this action on August 24, 2011, challenging the constitutionality of certain provisions in Idaho Code Title 18, Chapters 5 and 6, which regulate the performance of abortions in Idaho.  Simultaneous with the filing of the Complaint, Plaintiff moved for a temporary restraining order, seeking a TRO restraining Bannock County Prosecutor Mark L. Heideman from criminally charging any woman for violating Idaho Code §18-606 in Bannock County, Idaho.  On September 7, 2011, Plaintiff amended her motion to include a request for a TRO restraining Heideman

from criminally prosecuting or bringing any civil action for injunctive relief against any person for allegedly providing an abortion in violation of the provisions of Idaho Code § 18-505.

On September 9, 2011, the Court heard oral argument and took the motion under advisement. For the reasons expressed below, the Court will grant the motion in part and deny the motion in part. The Court will enjoin the enforcement of Idaho Code §§ 18-606 and § 18-608(1) only.

## BACKGROUND

**1.     The Statutes**

   **A.     *Idaho Code § 18-606***

Idaho Code § 18-606(2) makes it a felony, except as permitted by the remainder of Title 8, Chapter 6 of the Idaho Code, for "[e]very woman who knowingly submits to an abortion or solicits of another, for herself, the production of an abortion, or who purposely terminates her own pregnancy otherwise than by live birth."

Idaho Code § 18-608 entitled "Certain abortions permitted – Conditions and guidelines" provides the statutory content for the limitation on the applicability of Idaho Code § 18-606. It allows a woman to terminate her pregnancy during the first trimester if and when the abortion is performed by a physician "in a hospital or in a physician's regular office or a clinic which office or clinic is properly staffed and equipped for the performance of such procedures and respecting which the responsible physicians have made satisfactory arrangements with one or more acute care hospitals within reasonable

proximity thereof providing for the prompt availability of hospital care as may be required due to complications or emergencies that might arise." *Id.* at § 18-608(1).

### B.   *Idaho Code § 18-505*

Idaho Code § 18-505, or the Pain-Capable Unborn Child Protection Act, categorically bans non-therapeutic abortions at and after twenty weeks.  "Any person who intentionally or recklessly performs or attempts to perform an abortion in violation of the provisions of section 18-505, Idaho Code, is guilty of a felony."  I.C. § 18-507. The Act also permits certain persons, including a prosecuting attorney, to file an action for injunctive relief against an abortion provider who violates § 18-505.

### 2.   The Plaintiff

Plaintiff, a resident of Bannock County, is unmarried, has three children, and is unemployed. *McCormack Aff.* ¶¶ 1-2, Dkt. 4.  In 2010, she had no income other than child support payments of between $200 and $250 per month.  *Id.* ¶ 3.  She testifies in her affidavit that she became pregnant during the fall of 2010 and wanted to obtain an abortion, but she knew that no physicians provided abortions in southeast Idaho.  *Id.* ¶¶ 4-5.  Plaintiff had previously obtained an abortion in Salt Lake City, Utah, but she did not have the money necessary to obtain another abortion there.  *Id.* ¶6.  Plaintiff discovered that abortions can be performed using medications rather than surgery, and the cost for a medical abortion is significantly less than the cost of a surgical abortion.  ¶ 7.  Plaintiff learned that such medications for inducing abortions, which are approved for use in the United States, can be purchased from a physician over the internet.  *Id.* ¶ 8.

Plaintiff does not admit that she induced an abortion with prescribed medication purchased over the internet, but it is undisputed that she was charged with a felony for having an unlawful abortion in violation of Idaho Code § 18-606 by Defendant Heideman.  The state court orally granted a motion to dismiss the criminal charges against Plaintiff on August 24, 2011.  The state court entered a written decision confirming its oral ruling on September 7, 2011.

Heideman has not determined whether his office will re-file the criminal charges against Plaintiff under Idaho Code §18-606(2).  *Heideman Decl.* ¶ 3, Dkt. 12-1.  Plaintiff now seeks a TRO restraining Heideman from enforcing Idaho Code §§ 18-606, 18-608, and 18-505.

## ANALYSIS

Before addressing the merits of the action, it is necessary to resolve the threshold questions raised by Heideman's arguments: (1) whether the Court must abstain from deciding the constitutionality of § 18-606 under *Younger v. Harris,* 401 U.S. 37 (1971); and (2) if *Younger* abstention is not appropriate, whether Plaintiff has standing to challenge the constitutionality of both §§ 18-606 and 18-505.

1. ***Younger* Abstention Is Not Dictated Here.**

*Younger* "and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings, absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431, (1982).  "The policy rests on notions of comity and respect for state functions and was

born of the concern that federal court injunctions might unduly hamper state criminal prosecutions." *Champion International Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984). These considerations of comity and federalism dictate that "the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (quoting *Younger*, 401 U.S. at 45) (emphasis in *Dayton*).

When a case falls within the proscription of Younger, a district court must dismiss the federal action. *See Juidice v. Vail*, 430 U.S. 327, 337 (1977). The Supreme Court has stated expressly that "[w]here a case is properly within [the *Younger*] category of cases, there is no discretion to grant injunctive relief." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 816 n. 22 (1976). *Younger* abstention is required when: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; and (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceedings. *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose,* 546 F.3d 1087, 1092 (9th Cir. 2008).

The Court agrees that the second and third threshold elements of *Younger* are likely satisfied. However, the state-court proceeding requirement has not been met. *Younger* abstention does not apply when a plaintiff seeks a *prospective* injunction against prosecutions under an allegedly unconstitutional ordinance. *Wiener v. County of San Diego*, 23 F.3d 263, 267 (9th Cir. 1994). "Abstention is appropriate only on federal

MEMORANDUM DECISION AND ORDER - 5

actions to restrain enforcement of a pending state proceeding or of an already-entered state court order." *Id.* But Plaintiff in this case does not seek to prevent enforcement of a state court order: at the time she filed this action, the state court had orally dismissed the pending criminal charges against her. This oral dismissal effectively terminated the state prosecution, obviating any concern that this Court's issuance of an injunction might unduly hamper state criminal prosecutions. As explained by the U.S. Supreme Court:

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.

*Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

In reaching this conclusion, the Court rejects Defendant's argument that the state-court proceeding remained "on-going" until the state court formalized its oral decision in writing. To find otherwise would elevate form over substance and would do nothing to further the principles of federalism and comity espoused in *Younger*. *Cf. Willis v. Larsen*, 718 P.2d 1256 (Idaho App. 1986) (requiring moving party to wait to seek reconsideration until court clerk had file-stamped formal judgment would have been hypertechnical and violated the spirit of the rules of civil procedure). The Court therefore finds that the first requirement for *Younger* abstention was not met.[1]

---

[1] Even if the Court did not make this finding, the issue would be moot. To foreclose any argument that Younger abstention is appropriate, Plaintiff filed an identical action with identical briefing after the state court entered its written order confirming its oral dismissal of the charges against Plaintiff.

**2.     Standing**

Before moving to the merits of the action, the Court must also address whether Plaintiff has standing to bring this action. Of course, Plaintiff's constitutional challenge to both §§ 18-606 and 505 must present a "case or controversy" before the Court has jurisdiction. U.S. Const. Art. III, § 2. To that end, Plaintiff must establish that: (1) she personally has suffered some actual or threatened injury as a result of the allegedly illegal conduct; (2) the injury fairly can be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable decision by the federal court. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982). Or, as the Supreme Court has explained: "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).

A plaintiff contesting the constitutionality of a criminal statute is not required to "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459(1974). Rather, if the plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, she "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 (1973). But "persons having no fears of state

prosecution, except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger*, 401 U.S. at 42.

### A. *Plaintiff Has Standing to Challenge I.C. §§ 18-606 and § 18-608(1).*

Plaintiff does not allege that she was pregnant at the time she filed this action. No question exists, however, that Heideman filed felony charges against her for allegedly violating Idaho Code § 18-606(2). It is also undisputed that the state court dismissed the charges against Plaintiff without prejudice, and Heideman has not yet decided whether to re-file the charges against Plaintiff. Yet, Heideman argues that Plaintiff lacks standing to challenge § 18-606 and § 18-608 because Plaintiff induced an abortion at home using FDA-approved medication prescribed by a physician and purchased over the internet, and not because she guessed incorrectly about whether a physician complied with § 18-608.

The Court disagrees. Plaintiff has actually suffered and continues to be threatened injury as a result of her alleged violation of Idaho Code § 18-606. Heideman sought to criminally prosecute Plaintiff for violating Idaho Code § 18-606, and only the state court's dismissal of the charges *without prejudice* thwarted Heideman's efforts. Now, Heideman suggests that a possibility exists that his office will re-file the charges against Plaintiff. Plaintiff therefore continues to face the very real threat of prosecution by the Bannock County Prosecutor. Such fear of prosecutions is neither too conjectural nor speculative to deprive Plaintiff the opportunity to challenge the prosecutor's enforcement of Idaho Code § 18-606.

Nor is the Court persuaded by Heideman's argument that Plaintiff cannot establish "injury in fact from the purported burden imposed by § 18-606(2)'s criminal penalty, when applied in connection with § 18-608." *Def's Opp'n* at 10, Dkt. 12.  Heideman maintains that Plaintiff was not prosecuted under § 18-606(2) for "knowingly submit[ing] to an abortion or solicit[ing] of another, for herself, the production of an abortion." *Id.* Instead, according to Heideman, "[s]he was prosecuted under a different clause of §18-606(2) – i.e., for 'purposely terminating her own pregnancy otherwise than by a live birth.'" *Id*.  Therefore, Heideman argues, enjoining Heideman from prosecuting Plaintiff under § 18-606(2), when applied in connection with § 18-608, will not save Plaintiff from threatened injury because Heideman could still prosecute Plaintiff under § 18-606(2), absent the requirements set forth in § 18-608, "for purposely terminating her own pregnancy otherwise than by a live birth."

Heideman's argument too finely parses the language of Idaho Code § 18-606. Plaintiff seeks to enjoin enforcement of § 18-606; continued enforcement of § 18-606 arguably implicates constitutional considerations; fear of prosecution under Idaho Code § 18-606 continues to plague Plaintiff; and an order enjoining Heideman from enforcing § 18-606 would redress the threatened injury.  The record therefore establishes that Plaintiff allegedly engaged "in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and that "there exists a credible threat of prosecution thereunder."  *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).

Moreover, Heideman's argument ignores that what Plaintiff allegedly did – induce an abortion outside a medical clinic using FDA-approved medication prescribed by a doctor and purchased over the internet – could fall within the proscription of Idaho Code § 18-606, *even when applied in connection with § 18-608(1)*. At oral argument, Plaintiff clarified that she in fact did go to a physician to obtain an abortion, but the only doctor available in southeast Idaho is available through the internet. Therefore, arguably, Plaintiff could be prosecuted from obtaining an abortion from a physician who did not comply with the requirements of Idaho Code 18-608(1). And Heideman's statement that he prosecuted Plaintiff under a different clause of the statute does not deprive her of standing to challenge § 18-606, in connection with § 18-608(1). *C.f. Richmond Medical Center for Women v. Gilmore*, 11 F.Supp.2d 795, 805 (E.D.Va. 1998) (holding plaintiffs had standing to challenge statute prohibiting partial birth abortions because the procedures as performed by plaintiffs could fall under the statute).

Plaintiff's potential punishment for violating Idaho Code § 18-606, read in connection with § 18-608, does not extend to all the challenged subsections of §18-608, however. Based on the facts alleged, there can be no argument that Plaintiff violated either § 18-608(2) or § 18-608(3). Therefore, Plaintiff does not face any threat of prosecution under these subsections. "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298-299 (quoting *Younger*, 401 U.S. at 42). For this reason,

the Court finds that only Plaintiff's challenge to § 18-606, read in connection with § 18-608(1) – and not her challenge to the other subsections of § 18-608 – presents a justiciable case or controversy.

**B.     *Plaintiff Does Not Have Standing to Challenge § 18-505***

In its Amended Motion, Plaintiff also seeks a TRO restraining Heideman from criminally prosecuting or bringing any civil action for injunctive relief against any person for allegedly providing an abortion in violation of the provisions of Idaho Code § 18-505 in Bannock County, Idaho.  Idaho Code 18-505, or the Pain-Capable Unborn Child Protection Act, categorically bans non-therapeutic abortions at and after twenty weeks. As explained in a letter from the Attorney General to Idaho Senator Chuck Winder, "Section 5 plainly intends to erect a substantial obstacle to the right to choose," and "there is strong reason to believe that Section 5 is unconstitutional under existing precedent."  *Opinion Letter* at 7, Ex. B to Counsel Aff., Dkt. 14.

Plaintiff, however, does not have standing to challenge the Pain-Capable Unborn Child Protection Act.  As noted above, Plaintiff does not allege that she was pregnant at the time she filed this action.  Nor does Plaintiff allege that her past conduct in purchasing medication to induce an abortion would fall within the proscription of the Act, exposing her to a real threat of prosecution.  Finally, Plaintiff's testimony that she would seek an abortion if she were to become pregnant in the future does not suffice to give her standing.  *Roe v. Wade*, 410 U.S. 113, 127 (1973).

In *Roe v. Wade*, a childless married couple, the woman not being pregnant, alleged that they had no desire to have children, and they would terminate any future pregnancy by abortion. 410 U.S. at 127. They sought to challenge the constitutionality of a Texas abortion statute. *Id.* The Supreme Court held that the couple had no standing because the possibility of injury was too speculative: "[t]heir alleged injury rests on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health. Any one or more of these several possibilities may not take place and all may not combine." *Id.* Like the couple in *Roe*, the possibility that Plaintiff may become pregnant in the future and that she may seek an abortion in southeast Idaho is pure conjecture. Plaintiff is therefore not an appropriate party to challenge the constitutionality of the Pain-Capable Unborn Child Protection Act.

The Court therefore will not consider Plaintiff's challenge to §18-505.

3.     **Motion for TRO**

The United States Supreme Court reiterated the standard for a preliminary injunction in *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).[2] A plaintiff seeking a TRO must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3)

---

[2]  Where, as here, a hearing on the motion occurs, the standards applied to whether a TRO should issue are those applicable under Fed. R. Civ. P. 65(a) with recognition that Rule 65(b) restricts the restraining order's duration. *See Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

the balance of equities tips in her favor; and (4) an injunction is in the public interest. All four elements must be shown, but a stronger showing of one element may offset a weaker showing of another.  *See*, *e.g., Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052-53 (9th Cir. 2010)

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Id.* at 376.  The standard for issuing a preliminary injunction is identical to that for issuing a temporary restraining order.  *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

The Court considers Plaintiff's challenge to Idaho Code §§ 18-606 and 18-608(1) only.

### A.   *Plaintiff Is Likely to Succeed on the Merits.*

Women have a Fourteenth Amendment right to terminate a pre-viability pregnancy. *Planned Parenthood v. Casey*, 505 U.S. 833, 895 (1992).  Although the Constitution guarantees women the liberty to make the "ultimate decision" to undergo an abortion, *Casey,* 505 U.S. at 879, the state may safeguard its interest in potential life by regulating the means by which abortion may be secured, so long as its regulations do not pose an "undue burden" on the woman's ability to obtain an abortion, *id.* at 874.  "An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id.* at 878.

To prevail on the merits of her facial challenge, Plaintiff must meet the standard set in *Casey*: A state statute regulating abortion is facially unconstitutional if in a "large fraction of cases in which the [statute] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." 505 U.S. at 895. Combining the injunction standard with the standard for prevailing on the merits, Plaintiff must show that it is likely to prevail on its claim that in a large fraction of cases in which the Act is relevant, it will operate as a substantial obstacle to a woman's choice to undergo a pre-viability abortion.

Plaintiff argues that Idaho Code § 18-606 places an undue burden on women's decision to choose a pre-viable abortion because its subjects women seeking abortions in Idaho to criminal prosecution if those women fail to ensure that their abortion providers comply with the requirements of Idaho Code § 18-608. At this early stage in the proceedings, the Court agrees. Under the statute, a woman is put to the Hobson's choice of finding a means to police her healthcare provider's actions, or being threatened with criminal prosecution for her healthcare provider's failings. Faced with these two choices, a woman will likely choose not to have an abortion through an Idaho physician.

But Heideman does not focus on whether prosecuting a woman for her abortion provider's failings would place an undue burden on the woman's decision to choose a pre-viability abortion. Instead, he responds that the only way Plaintiff can succeed on the merits of her claim, based on the facts presented here, is to "conclude that a State may not require elective abortion to be performed by a licensed physician." *Def's Opp'n* at 11,

Dkt. 12.  According to Heideman, this "proposition has been squarely rejected in a long line of case."  The Court finds two flaws in this argument.

First, as noted above, Plaintiff clarified at oral argument that the FDA-approved medication she procured through the Internet was prescribed by a physician.  Thus, if she did use the medication to terminate her pregnancy, it could be argued that the abortion was "performed" by a physician.  Under these facts, she could be criminally prosecuted if the state determined that the physician had not complied with Idaho statutory requirements.  Thus, Plaintiff has the right to challenge more than the requirement that an abortion be performed by a licensed physician.

Second, none of the cases Heideman cites in support of his argument that a state may limit abortion practice to licensed physicians involved a regulation that targeted women for their healthcare provider's failings.  Indeed, in *Planned Parenthood Ass'n of Kansas City v. Ashcroft* – a case cited by Heideman – the court expressly refused to interpret a Missouri statute, which prohibited any person from performing or inducing an abortion except a physician, from applying to the pregnant woman herself because it raised "a danger of constitutional invalidity."   483 F. Supp. 679, 684 (W.D. Mo. 1980), *rev'd in part on other grounds,* 655 F.2d 848 (8th Cir.), *op.supplemented,* 664 F.2d 687 (9th Cir. 1981), *aff'd,* 462 U.S. 476 (1983).  As suggested by *Ashcroft*, a statute that punishes women for their abortion providers' actions presents a much different question than a statute that imposes penalties on the abortion provider for its own lack of

compliance with certain reasonable requirements. This latter situation implicates serious constitutional concerns while the former does not.

In sum, the Court finds that Plaintiff is likely to succeed on the merits of her claim that requiring a woman to ensure that her abortion provider complies with the statutory requirements imposed by § 18-608(1) imposes an undue burden on her right to choose. Because the Court finds that Plaintiff is likely to succeed on the merits of her facial challenge to § 18-606, read in conjunction with § 18-608(1), the Court will not consider Plaintiff's as-applied challenge.

### B.  *Plaintiff is Likely to Suffer Irreparable Injury.*

The Court also finds that Plaintiff will suffer irreparable injury absent an injunction. Plaintiff has already been prosecuted once for violating Idaho Code § 18-606, and Heideman continues to threaten Plaintiff with criminal prosecution under the statute. The impending threat of re-prosecution under a potentially unconstitutional statute constitutes irreparable harm.

Heideman argues that any threat of re-prosecution is unconnected from any significant claim of constitutional injury. As described above, however, the Court has found that Plaintiff is likely to succeed on the merits of her claim that § 18-606, read in connection with § 18-608(1), imposes an undue burden on a women's decision to obtain an abortion. This finding completely undermines Heideman's argument that Plaintiff cannot show that she will suffer irreparable harm.

  **C.** *The Balance of the Equities Tips in Plaintiff's Favor and an the Issuance of an Injunction is in the Public Interest.*

  It is now necessary to balance the irreparable harm to Plaintiff, as well as other women seeking an abortion in Idaho, against the harm which Heideman, and the State of Idaho, will suffer if the requested relief is granted. *Winter*, 129 S.Ct. at 376.

  On the one hand, the potential harm to a woman seeking an abortion in Idaho is the threat of criminal prosecution for her healthcare provider's failings. On the other hand, the hardship to Heideman is the loss of the state's right to ensure the health of women seeking abortions in Idaho. In addition, the state has an interest in preserving the integrity of the health care profession. But the Bannock County Prosecutor's office cannot justify its attempt to ensure the safety of women seeking abortions and preserve the integrity of the healthcare profession by threatening a woman seeking an abortion with prison because the woman's abortion provider failed to comply with statutory requirements intended to protect that woman's health. As Plaintiff argues, "If the State was genuinely concerned with ensuring the health of women seeking abortions, the State would prosecute those abortion providers who were providing unsafe abortions rather than threaten prosecution of the women who had the abortions."

  The Court also agrees that burdening women seeking an abortion with a statutory duty to police the actions of their health care providers – a duty imposed on no other class of individuals seeking medical care in Idaho – does not further the public interest of the State. Under these circumstances, the Court finds that the balance of hardships tips decidedly in Plaintiff's favor.

**ORDER**

**IT IS ORDERED that** Plaintiff's Amended Motion for a TRO is GRANTED in part and DENIED in part.  Plaintiff's original motion for a TRO is deemed MOOT. The Bannock County Prosecutor is restrained from enforcing Idaho Code §§ 18-606 and 18-608(1).  This TRO will expire no later than 14 days after the Clerk enters this decision.

DATED: September 23, 2011

B. Lynn Winmill
Chief Judge
United States District Court